UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKELL MARSH, #331284,

        Petitioner,

                                              CASE NO. 08-CV-12250

v.                                       HONORABLE DENISE PAGE HOOD

RAYMOND BOOKER,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

**I.**      **Introduction**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Markell Marsh ("Petitioner") was convicted of felony murder, Mich. Comp. Laws § 750.316(1)(b), and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Wayne County Circuit Court in 2002 and was sentenced to consecutive terms of life imprisonment without the possibility of parole and two years imprisonment on those convictions.

      In his pleadings, Petitioner raises claims concerning the non-production of a witness and admission of prior testimony, the admission of other acts evidence, the exclusion of certain evidence, the use of perjured testimony, the jury instructions, the conduct of the prosecutor, the admission of his statements to a witness, the sufficiency of the evidence, and the effectiveness of trial and appellate counsel.  Respondent, through the Michigan Attorney General's office, has

filed an answer to the petition contending that it should be denied.  For the reasons set forth, the Court denies the petition for a writ of habeas corpus and denies a certificate of appealability.

## II.   **Facts and Procedural History**

Petitioner's convictions arise from the shooting death of Claude Wilson III at a restaurant in Detroit, Michigan on July 26, 1997.  The main prosecution witnesses at trial were another victim who survived the shooting and two of the men who participated in the crime.  Corey Brown testified that he was at Yo Mama's Kitchen ordering food with Claude Wilson when three men wearing masks and carrying guns entered the restaurant.  One of the men asked him if he was J.R. and whether he had any money.  When Wilson made a sudden move, the man carrying the rifle began shooting.  Brown and Wilson were shot and the perpetrators fled the scene.

Ronald Pringle testified that he was at a bar with Petitioner on July 25, 1997 when Petitioner's pager sounded.  Petitioner then asked him to drive him and O.T. Goree to Yo Mama's Kitchen.  As they approached the restaurant, they saw an Explorer and Petitioner said "there goes that sucker right there."  Pringle pulled the car into a back alley.  Petitioner and Goree then exited the vehicle carrying what looked like firearms, pulled ski masks over their faces, and entered the restaurant.  A few moments later, Pringle heard several gunshots. Petitioner and Goree then returned to the vehicle and they drove away.

Pringle acknowledged that he was on parole at the time of the incident, that he violated his tether, and that he was serving a prison term.  He denied that police officers promised him that they would appear at his parole hearing.  Pringle also testified that he encountered Petitioner while being transported from the jail to the courthouse.  Petitioner said that he was mad at him for cooperating with the police and made threatening remarks about Pringle's family.

2

O.T. Goree was scheduled to testify at trial, but failed to appear.  The prosecution informed the court that Goree had been cooperative and in contact with police, but had not appeared for trial because another county had issued unrelated charges against him.  The prosecution explained that Goree had been subpoenaed and that he was subject to both a state warrant and a federal unlawful flight warrant.  The trial court ruled that Goree was unavailable, that a due diligence hearing was unnecessary, and that Goree's prior preliminary examination testimony could be read into the record.

Goree testified that he went to Yo Mama's Kitchen with Petitioner and Pringle because Petitioner had problems with a man named J.R.  On the way into the restaurant, Goree suggested that "we might as well rob him if we're going in there."  They wore ski masks and were armed. Petitioner had a mini-fourteen semi-automatic rifle and Goree had a nine-millimeter handgun. Petitioner asked one of the men if he was J.R. and the man said no.  Petitioner began firing his weapon in the restaurant.  Goree fired shots outside of the restaurant as they fled the scene.

Goree acknowledged that he faced state charges involving armed robberies and home invasions, as well as federal drug conspiracy charges.  He indicated that he was offered a deal for a reduced sentence in those cases and would not be charged for his participation in the Yo Mama shooting if he testified truthfully in this case.  Goree also admitted that he did not provide the authorities with information about the shooting until he was arrested in 2001 and that his de-briefing statement does not indicate that Petitioner did any shooting at the restaurant.

Shanitra Robinson, Petitioner's girlfriend in 1997, also testified at trial.  She testified that she worked for a man named J.R. at Yo Mama's Kitchen at the time of the shooting, but did not date him or see him socially outside of work.  Robinson denied taunting Petitioner about J.R. or

3

other people she dated.  She did recall that J.R. drove her home on the night before the shooting.[1]

F.B.I. Special Agent Paul Sorce testified that he spoke to O.T. Goree about the Yo Mama's shooting pursuant to a Kastigar Agreement with Goree.  He explained that Goree's agreement was for a sentence of 7 to 15 years in prison plus two years for using the gun.  Sorce agreed that Goree's de-briefing statement did not say that Petitioner was the shooter.  Sorce also acknowledged that Goree's prior robberies had a similar modus operandi to the instant offense.

Detroit police officers testified about their investigation of the shooting.  Officer Clinton Mack testified that he observed one wounded man outside the restaurant and one dead man inside the restaurant.  Evidence technician James Robbins testified that he observed blood, bullet holes, and spent casings at the scene, but no guns were recovered.  Sergeant Thomas Berry testified that O.T. Goree told him that he and Petitioner went into Yo Mama's Kitchen and that Petitioner was the shooter.  Berry also testified that Shantira Robinson told him that she was dating Petitioner and J.R. at the same time.

After the prosecution rested, defense counsel moved for a directed verdict, which the trial court denied.  Defense counsel then sought to call Private Investigator Gerald Borycz to testify that Ronald Pringle had told him that he was not at the shooting and that he was coerced by police.  The trial court refused to allow the testimony finding it to be hearsay and noting that defense counsel failed to provide notice of the witness.  The court further noted that defense counsel had not inquired into such matters when Pringle testified nor requested that Pringle be subject to recall.  Defense counsel then recalled Agent Sorce who testified that he had offered to

---

[1]It appears that Robinson misspoke during this portion of her testimony as she stated that J.R. drove her home the night before *he was killed* even though Claude Wilson was the deceased.

appear at Ronald Pringle's parole hearing.  Petitioner did not testify on his own behalf at trial.

At the close of trial, the jury found Petitioner guilty of felony murder and felony firearm. The trial court subsequently sentenced him to the mandatory consecutive terms of life imprisonment without the possibility of parole and two years imprisonment.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims concerning the non-production of a prosecution witness and the admission of his preliminary examination testimony, the admission of other acts evidence involving witness intimidation, the exclusion of a witness's second-degree murder conviction, and the exclusion of impeachment evidence.  The court found the claims to be without merit and affirmed Petitioner's convictions.  *See People v. Marsh*, No. 241280, 2003 WL 22461798 (Mich. Ct. App. Oct. 30, 2003) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *See People v. Marsh*, 470 Mich. 865, 680 N.W.2d 898 (2004).

Petitioner subsequently filed a motion for relief from judgment in the state trial court raising claims concerning the jury instructions, the conduct of the prosecutor, the admission of certain evidence, the sufficiency of the evidence, and the effectiveness of trial and appellate counsel.  The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3), finding that the ineffective assistance of trial and appellate counsel claim lacked merit and that Petitioner had not shown good cause or actual prejudice for failing to raise the other claims on direct appeal of his convictions.  *See People v. Marsh*, No. 01-012195 (Wayne Co. Cir. Ct. April 27, 2006).  Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure "to meet the burden of establishing entitlement to relief

5

under MCR 6.508(D)." *See People v. Marsh*, No. 272667 (Mich. Ct. App. May 18, 2007)

(unpublished).  Petitioner also filed an application for leave to appeal with the Michigan

Supreme Court, which was similarly denied.  *See People v. Marsh*, 480 Mich. 1134, 745 N.W.2d

780 (2008).

Petitioner thereafter instituted this federal habeas action, essentially raising the same

claims presented to the state courts on direct appeal and collateral review of his convictions.

Respondent has filed an answer to the petition contending that habeas relief should be denied

because the claims lack merit and/or are barred by procedural default.

**III.    Analysis**

    **A.    Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his

habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

6

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the

reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

Lastly, when a state court fails to consider an issue or does not specifically address whether the alleged error constitutes a denial of a petitioner's federal constitutional rights, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of such a claim is *de novo*.  *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

### B.      Non-Production of Witness and Use of Prior Testimony

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to produce witness O.T. Goree at trial or exercise due diligence to locate him and the trial court erred in admitting his prior preliminary examination testimony.  Respondent contends that this claim lacks merit.

As an initial matter, the Court notes that to the extent that this claim is based upon a perceived violation of state law, it is not cognizable upon federal habeas review.  The alleged failure to comply with state law does not amount to an actionable habeas claim.  *See, e.g., Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The Court may grant a writ of habeas corpus only on the ground that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Robinson v. Stegall*, 355 F.3d 916, 917 (6th Cir.

2004).

Petitioner also cannot show that the admission of Goree's preliminary examination testimony violated his rights under the Confrontation Clause of the United States Constitution. In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the United States Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. The proper inquiry for deciding whether a statement is testimonial is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005). Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Crawford*, 541 U.S. at 54.

The Supreme Court has found no Confrontation Clause violation by the admission of an unavailable witness's prior testimony when there was an opportunity for cross-examination at the prior proceeding. *See Mattox v. United States*, 156 U.S. 237 (1895) (prior trial testimony); *Barber v. Page*, 390 U.S. 719, 725-26 (1968) (preliminary hearing testimony). A witness is 'unavailable' for purposes of the exception to the confrontation requirement if the prosecution has made a good faith effort to obtain the witness's presence at trial. *See Barber*, 390 U.S. at 724-25; *Winn v. Renico*, 175 F. App'x 728, 733 (6th Cir. 2006). "The lengths to which the prosecution must go to produce a witness, however, is a question of reasonableness." *Winn*, 175 F. App'x at 733 (citing *California v. Green*, 399 U.S. 149, 189, n. 22 (1970) (concurring opinion, citing *Barber*)). "The ultimate question is whether the witness is unavailable despite

9

good-faith efforts undertaken prior to trial to locate and present that witness....The prosecution bears the burden of proof in this regard. *Id.* (citations omitted).

Citing state evidentiary law and discussing the due diligence requirement, the Michigan Court of Appeals denied relief on this claim. The court determined that the trial court did not abuse its discretion in finding that the prosecution exercised due diligence to produce Goree where the prosecution had maintained contact with Goree, obtained an arrest warrant for him when a prosecutor in another county brought new charges against him, obtained a federal warrant, and utilized a federal marshal who traced Goree's calls, in an effort to produce the witness. The court concluded that the trial court did not err in admitting that testimony at trial. *See Marsh*, 2003 WL 2246178 at *1.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. As explained by the Michigan Court of Appeals, the record indicates that the prosecution took reasonable steps to maintain contact with Goree and secure his presence at trial. Although the prosecution's efforts, which included obtaining arrest warrants, were unsuccessful, they demonstrated due diligence. Goree was unavailable for purposes of trial. The record further indicates that Petitioner had the same motive and opportunity for questioning Goree during the preliminary examination and took advantage of that opportunity. Additionally, the trial court allowed defense counsel to elicit testimony from police officers regarding Goree's own criminal proceedings and his agreement to testify in Petitioner's case. Since Goree was unavailable at the time of trial and Petitioner had ample opportunity to cross-examine him during the preliminary examination, the trial court did not violate his confrontation rights by admitting Goree's prior testimony at trial. *See Romans v. Berghuis*, No.

10

2:06-CV-11330, 2007 WL 4247607, *7 (E.D. Mich. Dec. 4, 2007) (Duggan, J.) (finding no confrontation violation where witness was unavailable and prior trial testimony was admitted). Habeas relief is not warranted on this claim.

### C.   Other Acts Evidence Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence, *i.e.*, Ronald Pringle's testimony that Petitioner made intimidating statements to him prior to trial. Respondent contends that the other acts evidence claim is not cognizable upon habeas review and lacks merit.

Trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

As to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[2] "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496,

---

[2]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

11

512 (6th Cir. 2003).  Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).  Moreover, Petitioner's claim that the state trial court violated the Michigan Rules of Evidence by admitting the other acts evidence is not cognizable on habeas review.  *See, e.g., Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).  Petitioner has failed to state a claim upon which habeas relief may be granted as to this issue.

Even if Petitioner states a cognizable claim, he is not entitled to relief.  Petitioner has not shown that the disputed evidence rendered his trial fundamentally unfair.  As explained by the Michigan Court of Appeals in reviewing this issue under state law, the statements that Petitioner made to Pringle were relevant and admissible.  Evidence that a defendant threatened or intimidated a potential witness is admissible under 404(b) to show consciousness of guilt. *See, e.g., People v. Abernathy*, 153 Mich. App. 567, 573, 396 N.W.2d 436 (1985); *see also United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006); *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).  Such testimony was properly admitted under state law and the prosecution did not make an improper character or propensity argument based upon the evidence.  Petitioner has not shown that the admission of this evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair.  *See, e.g., Cotton v. McKee*, No. 07-10291-BC, 2008 WL 4647691, *5 (E.D. Mich. Oct. 20, 2008) (denying habeas relief on claim that prosecutor improperly solicited evidence that petitioner had threatened to kill a witness because no clearly established Supreme Court law holds that due process is violated by such evidence and evidence is admissible to prove consciousness of guilt).  Habeas relief is not

warranted on this claim.

### D.    Exclusion of Witness's Conviction

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in excluding evidence that witness Ronald Pringle had a prior, unrelated conviction for second-degree murder.  Specifically, Petitioner claims that he was denied the right to present a defense because he wanted to use Pringle's prior conviction to argue that Pringle was more likely to have committed the shooting than he was.  Respondent contends that this claim lacks merit.

As an initial matter, to the extent that Petitioner asserts a violation of state procedural or evidentiary law, he is not entitled to relief from this Court.  A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo*, 809 F.2d at 328.  Moreover, as discussed *supra*, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354.  Only when an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, may it violate due process and warrant federal habeas relief.  *See Bugh*, 329 F.3d at 512.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process."  *Washington v. State*, 388 U.S. 14, 19 (1967); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986).  However,

13

"a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *Scheffer*, 523 U.S. at 308. As explained by the Supreme Court, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.... [T]he Constitution permits judges "to exclude evidence that is 'repetitive ... only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (citations omitted).

Excluded evidence violates the right to present a defense only if the exclusion is arbitrary or disproportionate to the purpose it was designed to serve or infringes on a weighty interest of the accused. *Scheffer*, 523 U.S. at 308. "A defendant's interest in presenting... evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id*. (internal quotations omitted). In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

The Michigan Court of Appeals denied relief on this claim, finding that the trial court's limitation was appropriate because the evidence was inadmissible as other acts evidence of a witness and because Pringle's prior crime did not involve an element of theft or dishonesty. *Marsh*, 2003 WL 22461789 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable

14

application of federal law or the facts.  Whether Pringle committed a murder when he was younger was irrelevant to whether he committed the instant shooting.  Such evidence was irrelevant and inadmissible under state law.  Additionally, Petitioner was able to sufficiently cross-examine Pringle about his connection to the crime, as well as his motives for testifying at trial, including the fact that he had been incarcerated on a 20-year sentence and was on a parole tether at the time of the crime.  The jury was made aware of Petitioner's defense to the charges and the fact that Pringle had an incentive to testify against him.  Petitioner was sufficiently able to impeach Pringle.  The exclusion of additional, cumulative testimony did not deprive him of a fair trial.  *See, e.g., Davis v. Burt*, 100 F. App'x 340, 350 (6th Cir. 2004); *McCullough v. Stegall*, 17 F. App'x 292, 295 (6th Cir. 2001).  Petitioner has failed to establish that the trial court's ruling violated his constitutional rights or denied him a fundamentally fair trial.  Habeas relief is not warranted on this claim.

###    E.    <u>Exclusion of Testimony from Investigator</u>

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in excluding testimony from Private Investigator Gerald Borycz concerning a prior inconsistent statement allegedly made to him by witness Ronald Pringle.  Borycz would have testified that Pringle told him that he was not at the shooting and that he had been coerced by police into testifying.  The trial court ruled that Borycz's proffered testimony was inadmissible hearsay and excluded it.  Respondent contends that this claim lacks merit.

The Michigan Court of Appeals denied relief on this claim, finding that the trial court's limitation was not an abuse of discretion because Petitioner knew about Pringle's prior inconsistent statement before Pringle testified but failed to present it during cross-examination

or request that Pringle be subject to recall, and failed to offer a valid excuse for such inaction. The court further recognized that retrieving Pringle from prison would have delayed the trial. *Marsh*, 2003 WL 22461789 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The proposed testimony was hearsay under state law and inadmissible. Moreover, defense counsel had the opportunity to question Pringle on cross-examination about any such prior statements and either failed to do so or chose not to do so. The right to present a defense does not relieve a criminal defendant of the obligation to comply with the rules of evidence. *See Clark v. Arizona*, 548 U.S. 735, 770 (2006); *see also Williams v. Romanowski*, No. 2:06-CV-12670, 2009 WL 4947429, *4 (E.D. Mich. Dec. 14, 2009) (habeas petitioner's right to present a defense was not violated by court's decision to exclude hearsay evidence). The exclusion of the hearsay testimony was proper under state law and did not render Petitioner's trial fundamentally unfair. Petitioner had adequate opportunity to question Pringle and impeach his credibility at trial. Habeas relief is not warranted on this claim.

### F.   <u>Procedural Default of Certain Claims</u>

Petitioner also asserts that he is entitled to habeas relief due to the use of perjured testimony, erroneous jury instructions, prosecutorial error, the absence of counsel during questioning, insufficient evidence, and ineffective assistance of trial counsel. Respondent contends that these claims are barred by procedural default because Petitioner first presented them to the state courts on collateral review and those courts relied upon a procedural bar to deny him relief.

Federal habeas relief may be precluded on claims that a petitioner has not presented to

the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Alexander v. Smith*, 311 F. App'x 875, 883-84 (6th Cir. 2009) (confirming that

*Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert.*

*den.* 128 S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's

decision denying a motion for relief from judgment to determine whether the appellate courts

relied upon a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*,

380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals

denied relief for lack of merit).  In this case, the Michigan Supreme Court relied upon a state

procedural default in denying relief on these claims.[3]

A state prisoner who fails to comply with a state's procedural rules waives the right to

federal habeas review absent a showing of cause for noncompliance and actual prejudice

resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of

justice.  *See Coleman*, 501 U.S. at 753; *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007);

*Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

As an initial matter, Petitioner contends that his ineffective assistance of trial counsel

claims are not procedurally defaulted because he was represented by the same attorney at trial

and on direct appeal of his convictions.  The United States Court of Appeals for the Sixth

Circuit has indicated that such successive representation may excuse procedural default for

purposes of habeas review.  *See Hicks v. Collins*, 384 F.3d 204, 211 (6th Cir. 2004) ("[I]f the

defendant was represented by the same counsel at trial and on direct appeal, claims of

ineffective assistance of trial counsel are not defaulted because appellate counsel will rarely

---

[3]Moreover, in this case, the state trial court found that appellate counsel was not
ineffective and that Petitioner had not established good cause for his failure to previously raise
the claims or actual prejudice as required under MCR 6.506(D)(3).  The Michigan Court of
Appeals also denied relief pursuant to MCR 6.508(D).

assert his own ineffectiveness at trial.").  Assuming that such is the case, the Court will address the ineffective assistance of trial counsel claims on the merits.  *See* discussion *infra*.

Petitioner also asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of his remaining claims.  Petitioner has not shown that appellate counsel was ineffective.  In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690.  Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id*. at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly

19

left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate and viable issues, including challenges to the most damaging witness testimony and the exclusion of impeachment evidence, on direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting those claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner has failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner's defaulted claims lack merit for the reasons stated *infra*.

20

Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. These claims are barred by procedural default, lack merit, and do not warrant habeas relief.

### G.     Merits of Defaulted/Remaining Claims

#### 1.     Perjured Testimony

Petitioner asserts that he is entitled to habeas relief because the prosecutor elicited false testimony from Shanitra Robinson indicating that J.R. was the person who was shot and killed at Yo Mama's Kitchen. *See* Trial Tr., Vol. II, p. 105, 109.

The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d

21

320, 343 (6th Cir. 1998). A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343.

In this case, the trial transcript reflects that both the prosecutor and the witness referred to the deceased victim as J.R. rather than Claude Wilson. *See* Trial Tr., Vol. II, p. 105, 109. Contrary to Petitioner's claim, however, a fair reading of the record indicates that the prosecutor and the witness merely misspoke. That is the only logical and reasonable interpretation of what transpired when this portion of the transcript is read in the context of the entire trial. *See generally Hardaway v. Withrow*, 305 F.3d 558, 564 (6th Cir. 2002) (reversing grant of habeas relief and finding that state court interpretation of unclear transcript had "the merit of being an eminently sensible one"). While defense counsel objected to the prosecutor's line of questioning at one point, neither defense counsel nor the court corrected the parties or attempted to clarify the testimony. There is no evidence that the prosecutor intended to elicit false testimony or purposefully misrepresented the facts.

Petitioner relatedly objects to the prosecutor's remark that Petitioner "killed these two men." *See* Trial Tr., Vol. I, p. 80-81. Again, however, when read in context, it is clear that the prosecutor merely misspoke and was really referring to the fact that Petitioner was charged with *shooting* and attempting to rob two men, Claude Wilson and Corey Brown. Petitioner has not shown that the prosecutor intended to misrepresent the facts or mislead the jury, or that the jury was confused by this isolated remark.

22

Moreover, Petitioner is not entitled to relief on such a basis as any error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict). Any error by the prosecutor and/or the witness in this regard was clearly harmless given that the record clearly establishes that Petitioner was only charged with shooting Claude Wilson and Corey Brown and only convicted of killing Claude Wilson. Petitioner was not charged with shooting J.R. Habeas relief is not warranted on this claim.

### 2.    Jury Instructions

Petitioner also asserts that he is entitled to habeas relief because the trial court's jury instructions on reasonable doubt and malice and accomplice liability were erroneous and deprived him of a fair trial.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a

23

whole and the trial court record.  *See Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).

State law instructional errors rarely form the basis for federal habeas corpus relief.  *Estelle*, 502

U.S. at 71-72.

### a.    Reasonable Doubt

Petitioner first challenges the trial court's reasonable doubt instruction.  The trial court

instructed the jury in relevant part as follows:

> There is no such thing as proof beyond a shadow of a doubt.  Or proof beyond all
> doubt.  The standard is reasonable.  So, all you're asked to do is be reasonable.
> Use your reason and common sense.
>
> If you have a doubt, that is the kind of doubt that you should have a reason for
> having.  It's fair and honest and reasonable doubt.
>
> Now, a reasonable doubt is not a fictitious, vain, emotional, suspicion, possibility
> of innocence.  None of those things.
>
> It's a doubt for which you can assign a reason.  A fair, honest, and reasonable
> doubt.
>
> If you can say that you have an abiding conviction to moral certainty, you must
> bring back a verdict of guilty.
>
> If you do not have an abiding conviction to a moral certainty, it is of course your
> duty to bring back a verdict of not guilty.
>
> Again, a reasonable doubt is a fair, honest and reasonable doubt.

Trial Tr., Vol. III, p. 82.  Petitioner argues that this definition of reasonable doubt is defective

because it describes a reasonable doubt as one for which the jurors must assign a reason and

because it uses moral certainty language.

Petitioner has failed to show that the reasonable doubt instruction was improper or

otherwise deprived him of a fundamentally fair trial.  As the Supreme Court has explained, "the

Constitution does not require that any particular form of words be used in advising the jury of

the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).  Rather, the only

question is whether, "'taken as a whole, the instructions ... correctly convey the concept of

reasonable doubt to the jury.'"  *Id*. (quoting *Holland v. United States*, 348 U.S. 121, 140

(1954)).  Here, the instructions did so.  There was no error in the court's definition of

reasonable doubt as a doubt to which you could assign a reason.  The instruction did not

misstate the definition of "reasonable doubt" or shift the burden of proof to the defense.  *See*

*Willis v. Lafler*, No. 05-74885, 2007 WL 3121542, *14-15 (E.D. Mich. 2007) (adopting

magistrate judge's report and denying habeas relief on challenge to similar instruction).

 Similarly, the trial court's use of "moral certainty" language in the reasonable doubt

instruction did not violate due process.  While the United States Supreme Court in *Cage v.

Louisiana*, 498 U.S. 39, 41 (1990), invalidated a jury instruction that defined reasonable doubt

in terms of "grave uncertainty" and "actual substantial doubt," and required conviction based

upon "moral certainty," because such an instruction could lower the burden of proof necessary

for conviction, the Court limited that holding in *Victor v. Nebraska*, 511 U.S. 1 (1994).  In

*Victor*, the Court ruled that the mere use of the term "moral certainty" in a jury instruction

defining reasonable doubt by itself does not violate due process because it merely impresses

upon the jury the need to be reach a subjective state of near-certitude of guilt.  *Victor*, 511 U.S.

at 14-16.  The Court further found that use of the term "moral certainty" in the challenged

instruction did not violate due process because the instruction provided that the jurors had to

have an abiding conviction as to the defendant's guilt, equated moral certainty with doubt that

would cause a reasonable person to hesitate to act, and told the jurors to consider the evidence

without indulging in speculation, conjectures, or unsupported inferences.  *Id*. at 21-22.  The

Court distinguished the instruction in *Cage* which failed to provide any explanation or meaning for the phrase "moral certainty."  *Id.*

The Sixth Circuit has since held that the use of the term "moral certainty" does not automatically render a jury instruction on reasonable doubt fundamentally unfair.  In *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir.1997), the Sixth Circuit ruled that a reasonable doubt instruction which included the phrase "moral certainty" did not impermissibly lower the burden of proof because the instruction also provided that reasonable doubt was "an inability to let the mind rest easily" after considering the evidence.  The court concluded that the "moral certainty" language, considered in light of the entire instruction, did not create a reasonable likelihood that the jury impermissibly applied the jury instruction.  *Id.*  Other judges within this district have similarly found that the use of "moral certainty" language in reasonable doubt instructions which elaborate on the concept of moral certainty and reasonable doubt do not violate due process.  *See, e.g., Paluskas v. Bock*, 410 F. Supp. 602, 613-14 (E.D. Mich. 2006) (Lawson, J.); *Ferraza v. Tessmer*, 36 F. Supp. 2d 965, 973-75 (E.D. Mich. 1999) (Gadola, J.).

This case is consistent with those decisions.  Here, the trial court's reasonable doubt instruction conveyed the proper degree of certainty for conviction to the jury.  The instruction referred to an "abiding conviction" of  guilt and equated moral certainty with a fair, honest and reasonable doubt.  The trial court also explained that Petitioner was presumed innocent and the prosecution bore the burden of proof.  Given such circumstances, Petitioner cannot establish that the reasonable doubt jury instruction impermissibly lowered the burden of proof or otherwise rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

### b.    Malice and Accomplice Liability

26

Petitioner next contests the trial court's instructions on malice and accomplice liability. After instructing the jury on each of the elements of the charged offenses and other matters, the trial court instructed the jury on aiding and abetting as follows:

> 'Any person who shall directly commit an offense himself, or any person who shall procure, counsel, and aid and abet another person in the commission of an offense, shall be tried, and if found guilty shall be punished as if he directly committed the offense himself.
>
> Now, mere presence is not enough to convict a person as an aider and abetter. He must do some act which encourages, assists, or aids and abets another party in the commission of an offense.'
>
> Now, under Aiding and Abetting, if one person sits outside of the bank while the other two go in and rob it, he is just as guilty of committing the offense as the persons who committed the robbery.
>
> In this case, if you find that there was a robbery, and that the participants agreed to do a robbery, and it really doesn't make any difference who fired the weapon, because all the participants in the crime would be just as guilty as the one who actually fired the weapon. So, it doesn't make any difference.
>
> If the person who is an aider and abetter intended to kill the victim, or he knew that the person who actually fired the shot intended to kill the victim, or if you find that there was a situation, a dangerous situation committed in total disregard of the fact that death or bodily harm could result.
>
> If the person, Mr . Marsh, Mr. Goree or Mr. Pringle, if they planned to commit a robbery, it wouldn't make any difference who fired the shot. Each person would be equally involved. Each person would be guilty of the offense.
>
> So, it doesn't make any difference who.  You decide from the evidence.
>
> Was there a plan? Did they all make an agreement? If they all made an agreement, under the law of aiding and abetting they are all equally responsible. That is something that you have to determine.
>
> Again, in a robbery, if the person intended to kill, or you knew that the perpetrator intended to kill, and that he aided and abetted the other person in the commission of the offense, then all persons would be equally guilty. You make that decision.

But under the law of Aiding and Abetting, all persons who participate in the commission of an offense are equally guilty.

Trial Tr., Vol. III, pp. 98-100.

Petitioner has not shown that these instructions are erroneous or that they rendered his trial fundamentally unfair. Taken as whole, they adequately portray the concept of aiding and abetting. Moreover, even if the instructions were improper in some way, Petitioner is not entitled to relief because any error was harmless. *See Brecht*, 507 U.S. at 637. The testimony at trial indicated that Petitioner was guilty of felony murder and felony firearm as a principal, not merely as an aider and abettor. Goree's testimony and Pringle's testimony revealed that Petitioner participated in the robbery and committed the shooting. Given such evidence, any error in the aiding and abetting instruction was harmless beyond a reasonable doubt. Habeas relief is not warranted on this claim.

### 3.       Prosecutorial Misconduct

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for O.T. Goree's credibility and eliciting statements that Petitioner made to Ronald Pringle after the initiation of formal charges.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See*

28

*Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must

determine whether the challenged statements were indeed improper.  *Id*. at 452.  Upon a finding

of impropriety, the court must decide whether the statements were flagrant.  *Id.*  Flagrancy is

determined by an examination of four factors:  1) whether the statements tended to mislead the

jury or prejudice the accused; 2) whether the statements were isolated or among a series of

improper statements; 3) whether the statements were deliberately or accidentally before the

jury; and 4) the total strength of the evidence against the accused.  *Id.*; *see also Boyle v. Million*,

201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th

Cir. 1999)).  "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so

pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as

probably to prejudice the defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)

(citations omitted).

### a.    Vouching

Petitioner first asserts that the prosecutor improperly bolstered or vouched for witness

O.T. Goree by questioning Agent Sorce about Goree's immunity agreement.  It is well-settled

that it is improper for a prosecutor to express his or her own personal beliefs and opinions

concerning the credibility of a witness.  *See United States v. Young*, 470 U.S. 1, 9-10 (1985);

*United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002).  Such statements are improper

because they can convey the impression that the prosecutor has evidence not presented to the

jury which supports the charge against the defendant thereby infringing upon the defendant's

right to be judged solely based upon the evidence presented and because the prosecutor's

opinion carries with it the imprimatur of the Government and may induce the jury to trust the

29

Government's judgment rather than its own.  *See United States v. White*, 58 F. App'x 610, 617-18 (6th Cir. 2003) (citing cases).

In this case, the prosecutor did not improperly vouch for Goree's credibility or bolster his testimony by presenting evidence of his immunity agreement.  A claim similar to Petitioner's was rejected in *United States v. Trujillo*, 376 F.3d 593 (6th Cir. 2004), where the prosecution noted that two witnesses "promised to be truthful and provide complete information" pursuant to their plea agreements.  The Sixth Circuit held such remarks did not constitute improper vouching because the prosecution:

> did not offer any personal observations or opinions as to the veracity of either [witness], nor did she place the prestige of the Government behind their credibility. Rather, the prosecutor's questions and comments merely encompassed the terms of [the] plea agreements which this Court has held to be permissible.

*Id.* at 608-09; *see also United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005) (citations omitted) ("improper vouching includes either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury.").  Such is the case here.  The prosecution did not imply any specialized knowledge of whether O.T. Goree had testified truthfully.  Rather, the prosecution simply presented evidence of the terms of his agreement. *See* Trial Tr., Vol. II, pp. 163-164. Petitioner has failed to establish that the prosecution erred or that he was denied due process.  Habeas relief is not warranted on this claim.

### b.      Elicitation of Statements

Petitioner next asserts that the prosecutor improperly elicited testimony about the threatening statements he made to Ronald Pringle because the statements were made after Petitioner was formally charged and in the absence of counsel.  Petitioner is correct that the

30

Sixth Amendment right to counsel attaches once a prosecution is commenced, *i.e.* after the initiation of adversary judicial criminal proceedings. *See, e.g., McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). When the right to counsel has attached, the police and prosecuting authorities are not allowed to question the accused outside counsel's presence absent a valid waiver of the right to counsel. *See, e.g., Montejo v. Louisiana*, _ U.S. _, 129 S. Ct. 2079, 2085 (2009) (citing cases); *Massiah v. United States*, 377 U.S. 201, 206 (1964). This rule applies regardless of whether the information is elicited by the police or an agent of the police, such as an undercover informant. *See United States v. Henry*, 447 U.S. 264, 269-71 (1980).

Three elements are necessary to establish such a Sixth Amendment violation: "(1) the right to counsel must have attached at the time of the alleged infringement; (2) the informant must have been acting as a 'government agent'; and (3) the informant must have engaged in 'deliberate elicitation' of incriminating information from the defendant." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 892 (3d Cir. 1999). While the Supreme Court has not formally defined the term 'government agent' for Sixth Amendment purposes, *id.* at 893 (discussing *Henry*, 447 U.S. at 270), federal appellate courts have held that an "informant becomes a government agent for purposes of [*Massiah*] only when the informant has been instructed by the police to get information about the particular defendant." *United States v. Birbal*, 113 F.3d 342, 346 (2d Cir. 1997) (citing cases); *see also Moore v. United States*, 178 F.3d 994, 999 (8th Cir. 1999).

In this case, Petitioner's claim fails because he has not satisfied either the second or the third element for establishing this type of Sixth Amendment violation. He presents no evidence that witness Ronald Pringle was acting as a government agent when the two of them spoke at

31

the county jail, nor has he shown that Pringle deliberately elicited incriminating information from him. To the contrary, the record indicates that Petitioner threatened Pringle of his own accord. Petitioner has failed to demonstrate that the prosecution engaged in misconduct or that his constitutional rights were violated. Habeas relief is not warranted on this claim.

### 4.    Insufficient Evidence

Petitioner asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of his guilt. In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998). The court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, a person who commits murder during the perpetration of a felony is guilty of first-degree murder. Mich. Comp. L. § 750.316. The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or

32

assisting in the commission of any of the felonies specifically enumerated in the statute.
*Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 460 Mich.
750, 759, 597 N.W.2d 130 (1999)).  The facts and circumstances of the killing may give rise to
an inference of malice, including evidence that the defendant used a deadly weapon.  *Id*.  The
elements of the underlying felony of armed robbery are:  (1) an assault, (2) a felonious taking of
property from the victim's presence or person, (3) while the defendant is armed with a weapon
described in the statute.  *See* Mich. Comp. L. § 750.529; *People v. Rodgers*, 248 Mich. App.
702, 707, 645 N.W.2d 294 (2001).

This Court finds that a rational trier of fact could have found that the prosecution proved
beyond a reasonable doubt that Petitioner committed the felony murder.  The testimony of
Ronald Pringle and O.T. Goree, if believed, was more than sufficient to establish that Petitioner
committed the shooting and that he did so during an attempted robbery.  Petitioner essentially
challenges the credibility of the testimony and the inferences the jury drew from the evidence at
trial.  However, it is well-settled that "[a] federal habeas corpus court faced with a record of
historical facts that supports conflicting inferences must presume - even if it does not
affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of
the prosecution, and must defer to that resolution."  *Walker v. Engle*, 703 F.2d 959, 969-70 (6th
Cir. 1983).  It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts.
*See Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618.  Habeas relief is not warranted on this
claim.

### 5.        Ineffective Assistance of Trial Counsel

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective

for failing to object or properly object to the previously-discussed claimed instances of improper testimony, jury instructional error, and prosecutorial misconduct.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just

34

result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

In this case, however, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct given this Court's determination that the foregoing claims lack merit.  Defense counsel cannot be deemed deficient for failing to make a futile objection or motion.  *See McQueen*, 99 F.3d at 1328.  Moreover, Petitioner has failed to establish that he was prejudiced by trial counsel's conduct–particularly given the testimony from his two accomplices who identified him as the perpetrator of the crime.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).  Petitioner has failed to establish that trial counsel was ineffective under the standard set forth in *Strickland*.  Habeas relief is not warranted on this claim.

### H.   Ineffective Assistance of Appellate Counsel

Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing defaulted issues on direct appeal in the state courts. Petitioner, however, is not entitled to habeas relief on any independent claim challenging appellate counsel's conduct.  As explained *supra*, the defaulted claims lack merit and Petitioner has not shown that appellate counsel was ineffective under the *Strickland* standard.  Habeas

35

relief is therefore not warranted on this claim.

**IV.** <u>**Conclusion**</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. When a court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85. The Court concludes that a certificate of appealability is not warranted because Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and reasonable jurists would not find the Court's procedural ruling debatable.

36

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and that a

certificate of appealability is **DENIED**.


s/Denise Page Hood
Denise Page Hood
UNITED STATES DISTRICT JUDGE


Dated:  January 31, 2011


I hereby certify that a copy of the foregoing document was mailed to Markell Marsh #331284,
Ryan Correctional Facility, 17600 Ryan Road, Detroit, MI 48212 and the attorneys of record on
this date, January 31, 2011, by electronic and/or ordinary mail.


s/LaShawn R. Saulsberry
Relief Case Manager, (313) 234-5165

37